## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SARA RODRIGUEZ,
an individual,

                                        Case No.:

      Plaintiff,

v.

AMSHER COLLECTION
SERVICES, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, SARA RODRIGUEZ (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, AMSHER COLLECTION SERVICES, INC. (hereinafter, "Amsher"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for Amsher's violations of the Fair Credit Reporting Act, 15 United States Code, Section

1681 *et seq*. (hereinafter, the "FCRA") wherein Amsher improperly credit-reported and subsequently improperly verified its reporting of an alleged Account on Plaintiff's consumer credit reports and in Plaintiff's consumer credit file that did not belong to Plaintiff.  More specifically, despite Plaintiff advising Amsher that she was not the individual responsible for the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed Amsher's reporting of such erroneous information directly to Equifax and Experian—Amsher failed to conduct a reasonable investigation and *continued* to report such account to Experian and/or Equifax with a significant, fraudulent balance due and past-due.

2.    Furthermore, this is an action for damages for Equifax's and Experian's violations of the FCRA wherein Equifax and Experian each failed to maintain reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff when preparing and generating Plaintiff's credit reports.

3.    Moreover, this is an action for damages for Experian's violations of the FCRA wherein Experian failed to conduct reasonable investigations and/or re-investigations after receiving disputes from Plaintiff resulting in erroneous and fictitious information related to a third-party remaining on Plaintiff's personal consumer credit reports and credit files.

## JURISDICTION, VENUE & PARTIES

4.    Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq.

5.    Defendants are subject to the jurisdiction of this Court as Defendants

each regularly transact business in this District.

6.      Venue is proper in this District as the acts and transactions described herein occur in this District.

7.      At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

8.      At all material times herein, Amsher is a for-profit corporation existing under the laws of the state of Alabama with its principal place of business located at 4524 Southlake Parkway, Suite 15, Hoover, Alabama 35244.

9.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

10.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCRA STATUTORY STRUCTURE

11.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

16.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting

4

agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

19.     At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

20.     At all material times herein, Amsher, itself and through its subsidiaries, regularly collects debts, and credit-reports debts associated with the same, allegedly

5

owed by consumers residing in Hillsborough County, Florida.

21.    At all material times herein, Amsher as well as Harris & Harris, LTD., Inc. each furnishes information to Equifax and Experian concerning an alleged collection account originally owed to Charter Communications, which never belonged to Plaintiff, referenced by account number beginning 43- and/or 52- (hereinafter, the "Alleged Debt" or the "Account").

22.    At all material times herein, Plaintiff did not authorize any individual or entity to open the Account in her name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

23.    At all material times herein, the Account does not belong to Plaintiff and instead belongs to an individual named "Sara Morgan."

24.    At all material times herein, Amsher is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

25.    At all material times herein, Equifax and Experian are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax and Experian each disburse such consumer reports to third parties under contract for monetary compensation.

26.    At all material times herein, Defendants act themselves or through their

agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

27.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

28.    In or near April 2025, Plaintiff received an alert from her credit monitoring service, which advised that a collection account reported by Amsher (i.e., the Account) was added to Plaintiff's Equifax and Experian credit reports.

29.    Amsher, Equifax, and Experian reported Charter Communications as the alleged original creditor of the Account.

30.    To the extent the originating Charter Communications Account was opened by an individual or entity, the Account was not opened by Plaintiff and was instead opened by an individual named "Sara Morgan."

31.    In the alternative, to the extent the originating Charter Communications Account was opened using any of Plaintiff's personal identifying information, such Account was either fraudulently opened without Plaintiff's consent, knowledge, or approval as a result of identity theft and fraud or opened using inaccurate/mistaken personal identifying information.

32.    After Plaintiff learned the Account was being reported on her credit reports, Plaintiff contacted Amsher by telephone.

33.    During the telephone call between Plaintiff and Amsher, Amsher asserted that Plaintiff's Social Security Number matched the Social Security Number

7

of the alleged Account owner, but the Account owner's last name was different than Plaintiff's last name.

34.    After Amsher's agent asked for Plaintiff's date of birth, which Plaintiff provided, Amsher's agent stated "this isn't you" and transferred Plaintiff to a manager, who ultimately terminated the call without any resolution.

35.    In or around March 2025 and/or April 2025, Plaintiff obtained copies of her Equifax and Experian credit reports.

36.    As of March 2025 and/or April 2025, Defendants were all reporting the Account as a collection account originally owed to Charter Communications with a balance due and past-due in the amount of $751.00.

37.    Furthermore, Experian reported the name "Sara Morgan" on Plaintiff's credit reports as an alternative name belonging to Plaintiff in the personal information section of Plaintiff's Experian report.

38.    Plaintiff has never been legally named Sara Morgan and Plaintiff has never used Sara Morgan as an alias.

39.    As of March 2025 and/or April 2025, Equifax and Experian were also reporting inaccurate addresses that never belonged to Plaintiff.

40.    In March 2025 or April 2025, following the discovery of the Account and the false name on her Equifax and Experian credit reports, Plaintiff disputed the reporting of the Account directly to Equifax and Experian (hereinafter, Plaintiff's "First Dispute").

41.    Furthermore, Plaintiff's First Dispute advised Experian that the name

Sara Morgan does not belong to Plaintiff because Plaintiff has never been legally named Sara Morgan and Plaintiff has never used Sara Morgan as an alias.

42.    Equifax received Plaintiff's First Dispute.

43.    Equifax communicated Plaintiff's First Dispute to Amsher.

44.    Amsher received notice of Plaintiff's First Dispute from Equifax.

45.    Experian received Plaintiff's First Dispute.

46.    Experian communicated Plaintiff's First Dispute to Amsher.

47.    Amsher received notice of Plaintiff's First Dispute from Experian.

48.    On or about April 11, 2025, Equifax sent a letter in response to Plaintiff's First Dispute.

49.    More specifically, Equifax's letter dated April 11, 2025 advised "[t]he information you disputed has been verified as accurate" yet conflictingly advised the Account "HAS BEEN DELETED FROM THE CREDIT FILE."

50.    Equifax's dispute results dated April 11, 2025 enclosed a full copy of Plaintiff's Equifax report, and Equifax was no longer reporting the Account.

51.    On or about May 12, 2025, Plaintiff received an e-mail from Experian with the results of Plaintiff's First Dispute to Experian.

52.    Despite Plaintiff's First Dispute to Experian and despite Equifax deleting its reporting of the Account following Plaintiff's First Dispute, Experian and Amsher purportedly verified their reporting of the Account, and Experian continued to report the Account as a delinquent, past-due collection Account belonging to Plaintiff.

53.    Notably, the Account was the only derogatory tradeline or collection

account on Plaintiff's credit reports in 2025.

54.    Furthermore, despite Plaintiff's First Dispute, Experian continued to report Sara Morgan as an alternative name belonging to Plaintiff.

55.    On or about May 12, 2025, Plaintiff called Experian after receiving the First Dispute results. Plaintiff asked Experian's agent why Experian did not delete its reporting of the Account because it does not belong to Plaintiff.

56.    In response, Experian's agent asked if Plaintiff believed she was the victim of identity theft, and Plaintiff responded that it could be identity theft because Plaintiff could not think of any other possible causes at that time. Experian then advised Plaintiff to send additional documents in support of the dispute, such as an Identity Theft Affidavit Report from the Federal Trade Commission.

57.    On or about May 21, 2025, Plaintiff filed an Identity Theft Affidavit Report with the Federal Trade Commission in effort to protect herself and her credit worthiness, wherein Plaintiff swore under oath and penalty of perjury that she does not have any unpaid accounts and the Account either does not belong to Plaintiff or was opened as a result of identity theft (hereinafter, "FTC Report").

58.    Plaintiff then sent a letter to Experian with the assistance of her attorneys dated May 29, 2025, wherein Plaintiff *again* disputed Experian's reporting of the Account and the name Sara Morgan (hereinafter, Plaintiff's "Second Dispute").

59.    Plaintiff's Second Dispute clarified that Plaintiff was unclear whether the Account was opened using Plaintiff's Social Security number as a result of identity theft and fraud, or if the true Account owner's Account was being reported on

Plaintiff's credit reports in error.  Either way, the Account did not belong to Plaintiff.

60.    Furthermore, in support of the Second Dispute, Plaintiff provided a copy of her FTC Report, Driver's License, and Social Security Card to corroborate her identity and to prove that she did not open or authorize the Account.

61.    On or about June 13, 2025, Experian sent an e-mail to Plaintiff in response to Plaintiff's Second Dispute advising that Experian deleted its reporting of the name Sara Morgan.

62.    Additionally, as of June 13, 2025, Experian conveyed that it no longer reported the Account furnished by Amsher.

63.    Between June 13, 2025 and October 28, 2025, Plaintiff did not identify any errors in her credit reports.

64.    However, no later than November 29, 2025, Plaintiff noticed that Experian was *again* reporting the Account, this time as a collection account furnished by Harris & Harris LTD.

65.    Additionally, as of November 29, 2025, Experian *again* reported the name Sara Morgan as an alternative name belonging to Plaintiff in the personal information section of Plaintiff's Experian report.

66.    On or about February 11, 2026, Plaintiff sent *another* letter to Experian, again with the assistance of her attorneys, wherein Plaintiff advised Experian that the Account reported by Harris & Harris LTD was the same Account previously reported by Amsher and deleted by Experian, and requested that Experian *again* delete its reporting of the Account (hereinafter, Plaintiff's "Third Dispute").

11

67.     Further, Plaintiff's Third Dispute advised Experian that it was *again* reporting Sara Morgan as an alternative name belonging to Plaintiff and requested that Experian delete its reporting of the name Sara Morgan.

68.     On or about February 25, 2026, Plaintiff receive an e-mail from Experian with the results of Plaintiff's Third Dispute.

69.     On or about February 25, 2026, Experian deleted its reporting of the Account furnished by Harris & Harris LTD and deleted its reporting of the name Sara Morgan.

70.     Equifax and Experian each prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders which included the Account as an open, past-due collections account, resulting in the Account appearing as a derogatory account on Plaintiff's credit reports and negatively impacting Plaintiff's credit scores.

## DAMAGES

71.     As a result of Defendants' reporting of the Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account asserted as owed by her personally if she needed to obtain credit in the near future, and that Plaintiff would pay higher interest rates in the event she could obtain financing.

72.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued

reporting of the Account with a balance past-due, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

73.    Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—documents provided with Plaintiff's disputes.

74.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

75.    Plaintiff retained Swift Law, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to Amsher Only)**

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

76.    Amsher is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and Experian delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's disputes.

77.    As described above,  Plaintiff was not and is not personally liable for the Account, because: (i) Plaintiff did not personally apply for the originating Account or open the originating Account; (ii) Plaintiff did not authorize any person to open to the originating Account in Plaintiff's name or on Plaintiff's behalf; and (iii) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the originating Account.

78.    Despite Plaintiff not being responsible for the Account, and despite Amsher receiving notice of Plaintiff's First Dispute from Experian, Amsher willfully and/or negligently failed to request that Equifax and Experian delete the tradeline associated with the Account and continued to report derogatory, late payment information to Equifax and Experian including as significantly past-due and charged off in response to Plaintiff's First Dispute.

79.    More specifically, Plaintiff communicated her First Dispute to Equifax and Experian wherein Plaintiff advised that the Account did not belong to Plaintiff and disputed Experian's reporting of the name Sara Morgan.

80.    Amsher received notice of Plaintiff's First Dispute from Equifax and Experian.

81.    In response to Plaintiff's First Dispute, Amsher falsely verified its reporting of the Account as belonging to Plaintiff to Equifax and Experian, and Amsher failed to request that Equifax and Experian delete the Account from Plaintiff's credit files as maintained by Equifax and Experian.

82.    Amsher's refusal to request that Equifax and Experian update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Amsher clearly knew or should have known the Account never belonged to Plaintiff.

83.    Amsher's re-investigations were not conducted in good faith.

84.    Amsher's re-investigations were not conducted reasonably.

85.    Amsher's re-investigations were not conducted using all information and documents reasonably available to Amsher.

86.    As a result of Amsher's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

15

87.     Overall, Plaintiff suffered damage to her credit reputation as a result of Amsher's conduct, Amsher defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Amsher unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—documents provided with Plaintiff's disputes.

88.     Amsher's conduct was a direct and proximate cause of, as well as a substantial factor in, causing serious injuries, damage, and harm to Plaintiff as stated herein.

89.     Amsher's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax and Experian)**

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

90.     Equifax and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

91.     Equifax and Experian willfully and/or negligently failed to establish or

16

follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account and with respect to Plaintiff's personal identifying information.

92.    Specifically, Equifax's and Experian's systems, policies, and procedures allowed the Account to appear in Plaintiff's credit reports that never belonged to Plaintiff and allowed inaccurate personal information to appear in Plaintiff's credit reports that never belonged to Plaintiff.

93.    Furthermore, despite Plaintiff *repeatedly* advising Experian that Sara Morgan was never Plaintiff's name and that the Account never belonged to Plaintiff, Experian *continued* to report the Account with a balance due, with a balance past-due, and with fraudulent derogatory payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files, and Experian continued to report the name Sara Morgan on Plaintiff's credit report.

94.    Additionally, despite Experian deleting its reporting of the Account furnished by Amsher, Experian subsequently re-inserted the Account furnished by Harris & Harris LTD while simultaneously re-inserting the inaccurate name Sara Morgan that never belonged to Plaintiff.

95.    Equifax and Experian each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files.

96.    As a result of Equifax's and Experian's conduct, actions, and inactions,

Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

97.     Overall, Plaintiff suffered damage to her credit reputation as a result of Equifax's and Experian's conduct, Equifax and Experian defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax and Experian unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—documents provided with Plaintiff's disputes.

98.     Equifax's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, serious injuries, damage, and harm to Plaintiff as stated herein.

99.     Equifax's and Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.***

18

**(As to Experian only)**

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully restated herein and further states as follows:

100.    Experian is subject to, and violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

101.    Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

102.    Overall, Plaintiff's disputes provided Experian with sufficient information and supporting documentation allowing Experian to identify that Sara Morgan is not Plaintiff's name and that the alleged Account never belonged to Plaintiff.

103.    In fact, despite Experian initially verifying its reporting of the Account with Amsher in response to Plaintiff's First Dispute, Experian finally deleted its reporting of the Account and inaccurate name following Plaintiff's Second Dispute.

104.    However, despite Plaintiff's First Dispute and Second Dispute, Experian

subsequently re-inserted its reporting of the Account under a different debt collector, Harris & Harris LTD, and re-inserted its reporting of the inaccurate name Sara Morgan.

105.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

106.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

107.    Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

108.    Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by Amsher.

109.    Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

110.    Experian's reinvestigation procedures are unreasonable.

111.    Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

112.    Experian's failure to review and reasonably consider all information received in Plaintiff's disputes was done in bad faith.

113.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Account.

114.   As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

115.   Overall, Plaintiff suffered damage to her credit reputation as a result of Experian's conduct, Experian defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Experian unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—documents provided with Plaintiff's disputes.

116.   Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damage, and harm to Plaintiff as stated herein.

117.   Experian's actions in violation of 15 United States Code, Section 1681i *et seq.*, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

      a.      Judgment against Amsher, Equifax, and Experian for maximum statutory damages for violations of the FCRA;

      b.      Actual damages in an amount to be determined at trial;

      c.      Compensatory damages in an amount to be determined at trial;

      d.      Punitive damages in an amount to be determined at trial;

      e.      An award of attorney's fees and costs; and

      f.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

      Respectfully submitted,

      **SWIFT LAW PLLC**

      */s/  Aaron M. Swift*
      **Aaron M. Swift, Esq., FBN 0093088**
      Jordan T. Isringhaus, Esq., FBN 0091487
      Sean E. McEleney, Esq., FBN 125561
      Jessica A. Cowan, Esq., FBN 1069016
      11300 4th Street N., Suite 260
      St. Petersburg, FL 33716
      Phone: (727) 490-9919
      Fax: (727) 255-5332

aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*